**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

JOHN D. WASHINGTON,

        **Petitioner-Defendant,**

v.                                   **Civil Action No. 1:13-cv-247**
                                   **Criminal Action No. 1:12-cr-9**
                                   **(Judge Keeley)**

UNITED STATES OF AMERICA,

        **Respondent-Plaintiff.**

## REPORT AND RECOMMENDATION/OPINION

## I.   INTRODUCTION

On November 12, 2013, John D. Washington ("Petitioner"), proceeding *pro se*, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Civil Action No. 1:13-cv-247, Docket No. 1; Criminal Action No. 1:12-cr-9, Docket No. 32.) On November 13, 2013, the Clerk of Court mailed Petitioner a Notice of Deficient Pleading, which informed him that he had twenty-one (21) days to correct his Motion by filing it on the correct form as per Local Rule of Prisoner Litigation Procedure 3.4. (Docket No. 35.)[1] Petitioner filed his correct form ("Court-Approved Motion") on December 9, 2013. (Docket No. 37.) On April 14, 2014, the undersigned entered an Order directing the Government to respond to Petitioner's motion. (Docket No. 40.) The Government received leave to file out of time and filed its response on May 13, 2014. (Docket Nos. 42, 43.) Petitioner filed his reply on July 15, 2014 after being granted an extension of time. (Docket Nos. 46, 48.)

The undersigned now issues this Report and Recommendation on Petitioner's motion without

---

[1]From this point, all docket numbers refer to entries in Criminal Action No. 1:12-cr-9.

holding an evidentiary hearing.  For the reasons stated below, the undersigned recommends that the District Judge deny and dismiss Petitioner's motion.

## II.    FACTS

### A.    Conviction and Sentence

On January 27, 2012, Petitioner signed a written plea agreement in which he agreed to plead guilty to a one-count Information charging him with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Docket Nos. 1, 11.)  In the agreement, Petitioner waived his right to appeal and collaterally attack his sentence.  Specifically, Petitioner's plea agreement contained the following language concerning his waiver:

> Mr. Washington is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed.  Acknowledging all this, the defendant knowingly waives the right to appeal any sentence within the maximum of the statute of conviction under the U.S.S.G. (Or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742, in exchange for the concessions made by the United States in this plea agreement.  **The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255**. The parties have the right during any appeal to argue in support of the sentence.

(Docket No. 11 at 3 (emphasis added).)

Petitioner appeared before United States District Judge Irene M. Keeley on September 4, 2012 to enter his plea of guilty.  (Docket No. 12.)  At that time, Petitioner signed a Waiver of Indictment, agreeing to proceed by Information.  (Docket No. 9.)  At the time of his plea, Petitioner was thirty (30) years old and had completed high school and half a semester at Fairmont State University.  (Docket No. 49 at 4:7-5:5.)  He had not taken any alcohol or drugs within the twenty-four (24) hours preceding his plea.  (Id. at 5:25-6:2.)  When asked by the Court, Petitioner confirmed

that counsel had answered all his questions concerning the plea agreement and that he had not felt pressured or forced into signing the agreement. (Id. at 16:2-11.)

Subsequently, the following colloquy occurred:

> THE COURT: All right. Now in paragraph ten, if we could move down there, the waiver provision says that you're waiving your right to appeal any sentence within the maximum of conviction, which is ten years. So if your sentence falls anywhere within the range of ten years, do you understand that you've given up your right to appeal or to collaterally attack the sentence on a habeas petition?
>
> THE DEFENDANT: Yes, ma'am.

(Id. at 19:16-23.)

The Court reviewed all the rights Petitioner was foregoing by entering a plea of guilty. (Id. at 24:24-227-2.) Petitioner again confirmed his understanding that he was giving up his right to appeal and file a habeas petition if his sentence fell within the ten-year statutory maximum. (Id. at 27:3-8.) During the hearing, the Government presented the testimony of Special Agent Ken Grace of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to establish a factual basis for the plea. (Id. at 27:17-31-14.) After hearing Special Agent Grace's testimony, Petitioner advised the Court that he was guilty of the one-count Information. (Id. at 31:19-23.) When asked, Petitioner confirmed that no one had forced or threatened him into taking the plea agreement and that the written plea agreement contained the full agreement between himself and the Government. (Id. at 35:10-16.) He also stated that counsel had adequately represented him and had not left anything undone on his behalf. (Id. at 36:6-11.) In conclusion, Judge Keeley found that Petitioner was "competent and capable of giving an informed plea," that his plea was "freely and voluntarily made," and that Petitioner understood the consequences of his plea. (Id. at 37:19-23.) Petitioner did not object to this finding.

Petitioner appeared before Judge Keeley for sentencing on October 26, 2012.  (Docket No. 50.)  Judge Keeley found that Petitioner's Sentencing Guidelines range was 70 to 87 months of incarceration.  (Id. at 7:3-4.)  She sentenced Petitioner to 78 months of incarceration with credit for time served, to be followed by three (3) years of supervised release.  (Id. at 22:18-23:10.)

B.    **Direct Appeal**

Petitioner did not file a direct appeal.

C.    **Federal Habeas Corpus**

1.    **Petitioner's Motion**

In his Court-Approved Motion, Petitioner raises the following claims:

1.    Counsel failed to act as his advocate;

2.    The Court lacked subject matter jurisdiction because the Information did not charge an essential element of the crime;

3.    The Court lacked subject matter jurisdiction at sentencing to enhance Petitioner's sentence beyond that charged by the Grand Jury; and

4.    Counsel was ineffective for failing to object to the use of prior convictions to enhance Petitioner's sentence.

(Docket No. 37 at 5-10.)

2.    **Government's Response**

In its response, the Government asserts that Petitioner's motion should be denied because:

1.    Petitioner waived his right to file a motion pursuant to 28 U.S.C. § 2255 as part of his plea agreement;

2.    Petitioner's claims are procedurally defaulted;

3.    Petitioner cannot raise sentencing issues in his motion;

4.    Petitioner's claims regarding subject matter jurisdiction are meritless; and

4

5        .Petitioner has not met his burden of showing that counsel was ineffective.

(Docket No. 42 at 1-10.)

**3.     Petitioner's Reply**

In his reply, Petitioner asserts:

1.      The Government concedes to the facts set forth in his claims by not individually responding to such claims;

2.      The Government failed to file an Information pursuant to 21 U.S.C. § 851 to enhance his sentence;

3.      He has demonstrated that counsel was ineffective.

(Docket No. 48 at 1-8.)

## III.    ANALYSIS

*A.     Applicable Law Regarding Petitioner's Waiver*

**1.     Law Governing Waivers of Direct Appeal and Collateral Attack Rights**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system.  Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977).  However, the advantages of plea bargains are only secure when "dispositions by guilty plea are accorded a great measure of finality."  Id.  The Fourth Circuit has recognized that the Government often secures waivers of both appellate and collateral attack rights "from criminal defendants as part of their plea agreement."  United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

Courts have routinely held that "defendants can waive fundamental constitutional rights such as the right to counsel, or the right to a jury trial."  United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992).  Specifically, the Fourth Circuit has held that "a waiver-of-appeal-rights provision in a

valid plea agreement is enforceable against the defendant so long as it is 'the result of a knowing and intelligent decision to forgo the right to appeal.'" United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994) (citations omitted). However, a defendant still retains the right to appellate review on limited grounds, such as when a sentence above the maximum penalty provided by statute is imposed or when a sentence is imposed based on a constitutionally impermissible factor. Id. at 732. Furthermore, the Attar court recognized that a defendant cannot "fairly be said to have waived his right to appeal his sentence" on the ground that he was wholly deprived of counsel during sentencing procedures. Id.

Eleven years later, the Fourth Circuit determined there was no reason to distinguish between waivers of appellate rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220 n.2. The Fourth Circuit noted that all courts of appeals to have considered the issue have "held that the right to attack a sentence collaterally may be waived so long as the waiver is knowing and voluntary." Id. at 220. The Lemaster court did not address whether the same exceptions that were noted by the Attar court apply to a waiver of collateral attack rights, but it did note that it saw "no reason to distinguish" between the two. Id. at 220 n.2; see also United States v. Cannady, 283 F.3d 641, 645 n.3 (4th Cir. 2000) (collecting cases where the court has determined that waivers of § 2255 rights are generally valid).

The Fourth Circuit has not yet issued a binding decision defining the scope of collateral attack waivers and so has not yet imposed on this Court a standard governing "the extent to which an ineffective assistance of counsel claim can be precluded by a § 2255 waiver." Braxton v. United

States, 358 F. Supp. 2d 497, 502 (W.D. Va. 2005).[2] However, several courts have held that collateral attack waivers should be subjected to the same conditions and exceptions applied to waivers of direct appellate rights. Cannady, 283 F.3d at 645 n.3 (collecting cases). Furthermore, most courts of appeals have determined that waivers of collateral attack rights encompass claims "that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver." Braxton, 358 F. Supp. 2d at 503.

### 2. Law Governing Whether a Waiver is Knowing and Intelligent

The Fourth Circuit has held that the determination of whether a waiver of appellate and collateral attack rights is "knowing and intelligent" "depends 'upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused.'" Attar, 38 F.3d at 731 (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)). This determination is often made upon reviewing the "adequacy of the plea colloquy" and determining, in particular, "whether the district court questioned the defendant about the appeal waiver." United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005). However, an ultimate decision is "evaluated by reference to the totality of the circumstances." United States v. General, 278 F.3d 389, 400 (4th Cir. 2002).

### B. Petitioner's "Subject Matter Jurisdiction" Claims

### 1. Petitioner's Claims Are Barred By His Waiver

As noted above, Petitioner waived his right to directly appeal or collaterally attack his sentence or the manner in which it was determined in any manner whatsoever as long as it was

---

[2]The Fourth Circuit issued an unpublished per curiam opinion affirming the Western District of Virginia's ruling in Braxton. See United States v. Braxton, 214 F. App'x 271 (4th Cir. 2007) (per curiam).

within the statutory maximum. (Docket No. 11 at 3.) In his motion, Petitioner now claims that the Court erred by imposing judgment when the Information omitted any mention of whether Petitioner had been "previously punished for one year and one month" (Docket No. 37 at 6.) He also asserts that the Court erred by relying on the Presentence Report ("PSR") to "enhance [his] offense level for his current conviction beyond that averred in the indictment by the grand jury." (Id. at 8.)

A defendant's sworn representations made at a plea hearing "carry a strong presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." Blackledge, 431 U.S. at 74. Accordingly, "in the absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" Lemaster, 403 F.3d at 221 (citations omitted).

After reviewing the record, the undersigned finds that Petitioner's waiver of his right to file a motion pursuant to 28 U.S.C. § 2255 was knowing and intelligent. See Attar, 38 F.3d at 731. At the Rule 11 colloquy, Petitioner testified that he had received his high school diploma and had completed half a semester of college. (Docket No. 49 at 4:14-5:5.) Subsequently, the following colloquy occurred:

> THE COURT: All right. Now in paragraph ten, if we could move down there, the waiver provision says that you're waiving your right to appeal any sentence within the maximum of conviction, which is ten years. So if your sentence falls anywhere within the range of ten years, do you understand that you've given up your right to appeal or to collaterally attack the sentence on a habeas petition?
>
> THE DEFENDANT: Yes, ma'am.

(Id. at 19:16-23.)

Petitioner also testified that he had reviewed the plea agreement wit his attorney before signing it.

(Id. at 13:18-20.) He confirmed that all his questions had been answered when he signed it. (Id. at 16:9-11.) When asked, Petitioner again confirmed that his rights to appeal and file a habeas petition were restricted by the terms contained in the plea agreement. (Id. at 27:3-8.) At the conclusion of the plea colloquy, Judge Keeley found that Petitioner was competent and capable of entering an informed plea, that he made his plea freely and voluntarily, and that he understood the consequences of his plea. (Id. at 37:19-23.) Therefore, the undersigned finds that Petitioner knowingly and intelligently waived his right to collaterally attack his sentence as part of his plea agreement.

### 2. Petitioner's Claims Are Procedurally Defaulted

The undersigned has already found that Petitioner waived his right to collaterally attack her sentence as part of her plea agreement; nevertheless, he has considered Petitioner's claims on their merits. As an initial matter, in its response, the Government asserts that all of Petitioner's claims are procedurally defaulted because he did not raise them in a direct appeal to the Fourth Circuit. (Docket No. 42 at 7-8.)

Typically, the failure to raise non-constitutional issues on direct appeal results in their being deemed waived in a § 2255 motion. See United States v. Emanuel, 869 F.2d 795, 796 (4th Cir. 1989). However, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' . . . or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998) (internal citations omitted). To establish cause, a movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). Actual prejudice is then shown by demonstrating that the error worked to a petitioner's "'actual and substantial

disadvantage,'" rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). To establish actual innocence, a petitioner must show that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley, 523 U.S. at 623 (citations omitted) (internal quotation marks omitted). Usually, a petitioner "must demonstrate actual factual innocence of the offense of conviction;" "this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." Mikalajunas, 186 F.3d at 494.

Although he does not explicitly say so, Petitioner appears to assert that his procedural default should be excused because of counsel's alleged ineffectiveness in raising the claims he now asserts. However, the Supreme Court has held that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Smith v. Murray, 477 U.S. 527, 535 (1986) (citation and internal quotation marks omitted). Accordingly, Petitioner has failed to demonstrate cause for his procedural default.

Furthermore, Petitioner cannot demonstrate actual innocence to excuse his procedural default. The Fourth Circuit has held that "ordinary misapplication of the guidelines does not amount to a miscarriage of justice." United States v. Mikalajunas, 186 F.3d 490, 496 (4th Cir. 1999). Generally, "actual innocence applies in non-capital sentencing only in the context of eligibility for application of a career offender or other habitual offender guideline provision."[3] Id. at 495. If this

---

[3] Recently, the Fourth Circuit held that "an erroneous application of the career offender enhancement amounts to a fundamental miscarriage of justice that is cognizable on collateral review." Whiteside v. United States, 748 F.3d 541, 551 (4th Cir. 2014). However, the undersigned notes that the finality of the Whiteside decision is uncertain, as the Fourth Circuit has granted a request to rehear the appeal en banc. Whiteside v. United States, No. 13-7152, 2014 WL 3377981 (4th Cir. July 10, 2014).

were not so, the Fourth Circuit reasoned, "whenever a movant is prejudiced by the misapplication of a sentencing guideline and does not raise the error on direct appeal, a federal court may nevertheless correct the error during a § 2255 proceeding, entirely eliminating the cause portion of the cause and prejudice requirement." Id. at 494-95. Here, Petitioner's sentencing claims do not involve a challenge to the application of a career offender or other habitual offender guideline provision. Accordingly, Petitioner cannot demonstrate actual innocence to excuse his procedural default. Nevertheless, the undersigned has considered Petitioner's claims on their merits below.

### 3.    Ground Two: Error Regarding Essential Element

As his second claim for relief, Petitioner asserts that the Court lacked subject matter jurisdiction to impose judgment on him because the Information lacked an essential element of the crime. (Docket No. 37 at 6.) Specifically, Petitioner states that the Information omitted "the essential element that [he] had been previously punished for one year and one month." (Id.)

The Information filed against Petitioner charged him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Section 922(g)(1) states:

> It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The Information stated as follows:

> On or about November 26, 2011, in Marion County, within the Northern District of West Virginia, defendant, **JOHN D. WASHINGTON**, having been convicted of a crime punishable by imprisonment for a term exceeding one year; that is to say, on or about January 16, 2009, defendant, **JOHN D. WASHINGTON**, was convicted in the Northern District of West Virginia, in Criminal No. 1:08CR42 of Felon in Possession of a Firearm, did knowingly possess, in and affecting interstate commerce, a firearm, that is: Bersa .380 A.C. P. handgun; in violation of Title 18,

11

United States Code, Sections 922(g)(1) and 924(a)(2).

(Docket No. 1.)  Contrary to Petitioner's argument, the Information only needed to include that he had been previously convicted of a crime punishable by imprisonment exceeding one year, not one year and one month.  Accordingly, the Information properly included that essential element, and Petitioner's claim is without merit.

### 4.      Ground Three: Court Erred By Using PSR to Enhance Sentence

As his third claim for relief, Petitioner alleges that the Court lacked subject matter jurisdiction at his sentencing to "enforce 21 U.S.C. § 851 et seq, as original and or second hearing to enforce Presentence Report Information as criminal indictment."  (Docket No. 37 at 8.) According to Petitioner, the Court erroneously relied on the information in his PSR as a "criminal indictment to enhance [his] offense level for his current conviction beyond that averred in the indictment by the grand jury."  (Id.)

As an initial matter, the Government did not file an Information pursuant to 21 U.S.C. § 851 against Petitioner.  Furthermore, § 851 reads in pertinent part:

> No person who stands convicted of an offense under this part [21 U.S.C. § 841 *et seq.*] shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851(a)(1) (alterations in original).  Petitioner was not convicted of a controlled substances offense under § 841 *et seq.*; accordingly, his reliance on § 851 is misplaced.

Likewise, Petitioner's argument regarding an indictment is misplaced, as he was never charged with the instant offense by indictment.  Although he does not cite to it, Petitioner appears

12

to be raising a claim pursuant to <u>Alleyne v. United States</u>, 133 S. Ct. 2151 (2013).  In <u>Alleyne</u>, the Supreme Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury" and "found beyond a reasonable doubt."  133 S. Ct. 2151, 2155 (2013). As an initial matter, the undersigned notes that Petitioner was not subject to any mandatory minimum sentence.  (Docket No. 49 at 17:9-14.)  Furthermore, even if Petitioner had been subject to a mandatory minimum sentence, the Supreme Court did not declare this new rule to be retroactively applicable on collateral attack.  <u>See</u> <u>In re Kemper</u>, 735 F.3d 211 (5th Cir. 2013); <u>In re Payne</u>, 733 F.3d 1027 (10th Cir. 2013); <u>Simpson v. United States</u>, 721 F.3d 875 (7th Cir. 2013) ( all finding that <u>Alleyne</u> does not apply retroactively). In addition to the Fifth, Seventh and Tenth Circuits, a number of district courts in this circuit and across the country have determined that <u>Alleyne</u> should not be applied retroactively for the purposes of collateral attack. <u>See, e.g.</u>, <u>Williams v. United States</u>, No. 5:13-CV-00108, 2013 WL 4083274, at *2 (W.D.N.C. August 13, 2013); <u>Smith v. Holland</u>, No. 13-147-KKC, 2013 WL 4735583, at *4 (E.D.Ky. Sept. 3, 2013); <u>Smith v. Fed. Bureau of Prisons</u>, No. 9:13–384–RMG, 2013 WL 833050 (D.S.C. July 23, 2013).  Additionally, <u>Alleyne</u> expanded upon the holding in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), which found that facts increasing the statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. 530 U.S. at 490..  According to the Seventh Circuit, the "Justices have decided that other rules based on <u>Apprendi</u> do not apply retroactively on collateral review. This implies that the Court will not declare <u>Alleyne</u> to be retroactive." <u>Simpson</u>, 2013 WL 3455876, at *1 (citing <u>Schriro v. Summerlin</u>, 542 U.S. 348, 124 S.Ct. 2519 (2004)).

Additionally, the undersigned finds that <u>Alleyne</u> would also not apply to Petitioner's case because, by entering into a plea agreement pursuant to the Information, Petitioner waived his right

to a jury trial. By doing so, Petitioner "waived his right for a jury to make sentencing determinations beyond a reasonable doubt." Newlen v. United States, Nos. 5:13-cv-112, 5:11-cr-24, 2014 WL 1787779, at *3 (N.D. W. Va. May 5, 2014); see also Grantham v. United States, Nos. 5:13-cv-104, 5:10-cr-37, 2014 WL 296937, at *3-4 (N.D. W. Va. Jan. 27, 2014) (finding same). Accordingly, to the extent Petitioner is raising an Alleyne argument, the argument is meritless.

The undersigned construes Petitioner's claim to be a challenge to how his base offense level was determined. As his PSR states:

> Mr. Washington was originally charged by the State of West Virginia, with Possession With Intent to Deliver Cocaine. The ATF subsequently commenced an investigation, and based on the defendant's prior felony convictions, he was charged federally with the instant federal offense, Felon in Possession of a Firearm. The defendant's criminal history included a 2002 felony conviction for Daytime Burglary, a 2003 conviction for felony Domestic Battery and a 2009 federal felony conviction for Felon in Possession of a Firearm. A review of the state of West Virginia records reveal that the defendant had not received a pardon or a commuted sentence.
>
> Relative to the computation of the sentencing guidelines, Chapter Two provides a base offense level of 20, as the defendant committed the instant offense after sustaining one felony conviction of either a crime of violence or a controlled substance, pursuant to U.S.S.G. § 2K2.1(a)(4)(A). Mr. Washington sustained a conviction for Burglary on June 19, 2002 in Harrison County Circuit Court, Case No. 02-F-142. Pursuant to U.S.S.G. § 2K2.1(b)(6)(B), the base offense level is increased by 4 levels as the defendant possessed the firearm in connection with another felony offense, i.e. the Possession With Intent to Deliver Cocaine. Circumstances surrounding this offense reveal that in addition to the firearm, officers found the defendant in possession of cocaine and a scale, all indicative of an individual involved in the sale of cocaine. Therefore, the Probation Office is recommending a 4-level adjustment, pursuant to U.S.S.G. § 2K2.1(b)(6)(B).

(Docket No. 17 at 8.)

Under U.S.S.G. § 2K2.1(a)(4)(A), "crime of violence" has "the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." U.S.S.G. § 2K2.1 App. Note 1. A crime of violence "includes murder, manslaughter, kidnapping, aggravated assault, forcible sex

offenders, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling." U.S.S.G. § 4B1.2 App Note 1. Petitioner's PSR makes clear that he sustained his burglary conviction when he and others entered a residence and "by threat of force, took approximately $500 in cash, a Sony Playstation and several compact discs." (Docket No. 17 at 12.) Accordingly, because Petitioner committed the instant offense after sustaining a conviction for a crime of violence, his base offense level was properly set at 20.

Furthermore, U.S.S.G. § 2K2.1(b)(6)(B), "another felony offense" refers to "any Federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1 App. Note 14(C). This subsection specifically applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." U.S.S.G. § 2K2.1 App. Note 14(B)(ii). At Petitioner's plea hearing, ATF Special Agent Ken Grace provided the following testimony:

> At approximately 3:20 a.m. November the 26th of 2011 Deputy Garrett with the Marion County Sheriff's Department was inside the Marion County Sheriff's Department and heard a gun discharge outside. He looked out and saw two individuals walking near the area of Adams Street and Monroe Street; went outside and by the time he got out there they had walked out of sight; however, he did hear yelling coming from the direction from which they had been walking. He ran toward that area and got sight of the two individuals again and started yelling for them to stop; however they continued walking. He continued to run toward the two individuals and they finally did stop after several commands of him telling them to stop. Both individuals were identified later on as Mr. Washington, the defendant, and a female by the name of Colleena Smith.
>
> Deputy Garrett told the defendant to turn around so he could pat him down for weapons, at which time he became argumentative and failed to comply with the Deputy's orders. At some point doing [sic] this interaction the defendant attempted to walk away and Deputy Garrett attempted to stop him from walking away and a

struggle ensued. Deputy Garrett called for additional units to come assist him. Officers from them Fairmont Police Department, along with additional Sheriff's Deputies from Marion County responded and the defendant was eventually brought under control and restrained.

Chief Deputy Wright, from the Marion County Sheriff's Department, recovered a Bersa pistol, model Thunder, .380 caliber with a serial number of 38–I'm sorry, 358672, which was loaded with six live rounds from inside the waistband of the defendant's pants, which was in a holster. Also recovered was a digital scale, approximately one gram of suspected powder cocaine and a hundred and seventy-one dollars in currency.

(Docket No. 49 at 29:4-30:11.) Given this, it is clear that the Court correctly applied a four-level enhancement to Petitioner's base offense level for possessing a firearm in connection with trafficking in cocaine. Accordingly, Petitioner's claim should be denied.

## C. Petitioner's Ineffective Assistance of Counsel Claims

### 1. Standard Governing Claims of Ineffective Assistance of Counsel

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. These two prongs are commonly referred to as the "performance" and "prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002).

16

Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. See Strickland, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. See id. at 691. A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: "he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297.

### 2.   Petitioner's Claims of Ineffective Assistance at Sentencing

Petitioner raises two claims of ineffective assistance at sentencing. First, he argues that counsel was ineffective for failing to object when Judge Keeley "unlawfully imposed a 78 month sentence" in violation of his plea agreement. (Docket No. 37 at 5.) Second, he asserts that counsel was ineffective for failing to object when Judge Keeley relied on his prior felony convictions to enhance his "base offense level beyond that averred in the indictment by the Grand Jury." (Id. at 10.)

As an initial matter, the Government asserts that all of Petitioner's claims are procedurally defaulted. Generally, when "a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either

'cause' and actual 'prejudice,' . . . or that he is 'actually innocent.'" Bousley, 523 U.S. at 622 (internal citations omitted). However, claims of ineffective assistance of counsel not raised on direct appeal and raised in a collateral attack do not require a "cause and prejudice" showing because these claims are more appropriately raised in a collateral attack than on direct appeal. See United States v. Richardson, 195 F.3d 192, 198 (4th Cir. 1999).

As to ineffective assistance of counsel claims raised regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated that the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea–including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas–were conducted in violation of their Sixth Amendment right to counsel" is not waived by a general waiver of appellate rights contained in the plea agreement. United States v. Attar, 38 F.3d 727, 732-33 (4th Cir. 1994). Therefore, "upon first blush it appears that [such] claims arising after the guilty plea and/or during sentencing are not barred by a general waiver of appeal rights." Oden v. United States, Civil No. 3:13-cv-93, Criminal No. 3:11-cr-56, 2014 WL 2462993, at *8 (N.D. W. Va. June 2, 2014.) Accordingly, Petitioner's claims that counsel was ineffective at sentencing are not barred by his waiver.

### a. Ground One: Counsel Failed to Object to 78-Month Sentence as a Violation of Plea Agreement

Petitioner's plea agreement contained the following provisions:

There have been no representations whatsoever by any agent or employee of the United States, or any other law enforcement agency, as to what the final disposition in this matter should and will be. This agreement contains nonbinding recommendations by the United States, pursuant to Rule 11(c)(1)(B); however the defendant understands that the Court is not bound by these sentence recommendations, and that the defendant has no right to withdraw a guilty plea if the Court does not follow the sentencing recommendations set forth in this plea

18

agreement.

Provided the defendant pays the $100.00 special assessment fee on or before the day of sentencing, and provided the United States Probation Office recommends, the United States will make the following <u>nonbinding</u> recommendations: 1) if, in the opinion of the United States Attorney's Office, the defendant accepts responsibility, or if the probation office recommends a two-level reduction for "acceptance of responsibility," as provided by Guidelines 3E1.1, the United States will concur in the recommendation; 2) should the defendant give timely and complete information about his own involvement and provide timely notice of his intent to plead guilty, permitting the United States to avoid trial preparation, and comply with all the requirements of the agreement, the United States will recommend an additional one level for timely acceptance of responsibility if this agreement is executed and returned to the United States Attorney's Office by **5:00 p.m. on February 6, 2012**, and 3) the United States will recommend that any sentence of incarceration imposed should be at the lower end of the applicable guideline range.

(Docket No. 11 at 2-3.) In fact, Petitioner himself acknowledges that his plea agreement mentioned "no specific sentence in months to be served." (Docket No. 37 at 5.) Accordingly, his plea agreement was not pursuant to Fed. R. Crim. P. 11(c)(1)(C), which states that in a plea agreement, the Government's attorney will

agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

At the Rule 11 hearing before Judge Keeley, the following colloquy occurred:

THE COURT: Now at the sentencing hearing, which is the final disposition, do you understand that the United States is going to advise me of your forthrightfulness and truthfulness?

THE DEFENDANT: Yes, ma'am.

THE COURT: I should have said forthrightness and truthfulness, or if you fail to be forthright and truthful and there are non-binding recommendations in paragraph seven, which the Government is agreeing to make but they're called non-binding because I, as the Court, am not bound by them and these are, as you may recall from your last case, a two level reduction for acceptance of responsibility, if, in the United States' opinion, you have accepted responsibility and if you give timely and complete

information about your own involvement and according to the signature on your plea agreement and the date, you have, then you would get the third level for timely acceptance and the United States will also recommend that your sentence of incarceration should be at the lower end of the advisory guideline range.

Now that's–if everything goes the way it's supposed to, that's how the sentencing will proceed but in paragraph eight it points out that if, in the opinion of the United States, you fail to cooperate or you violate a provision of the plea agreement, that the United States will not feel bound to make the foregoing recommendations and even if that happens, you're not going to have the right to withdraw your guilty plea. Do you understand that?

THE DEFENDANT: Yes, ma'am.

. . .

THE COURT: But if you plead guilty here, even if I accept your guilty plea and you don't like the sentence, do you understand that you will still be bound by your guilty plea and you can't withdraw it?

THE DEFENDANT: Yes, ma'am.

THE COURT: And do you understand that I'm not bound by the recommendations in the plea agreement and if I don't accept those recommendations and consequently your sentence is longer than you hoped it would be, you'd still be bound by your guilty plea but you can't withdraw it?

THE DEFENDANT: Yes, ma'am.

. . .

THE COURT: Okay. Now I've talked to you about what I think the construct of your guideline sentence may look like if it's total offense level 17, Criminal History Category V, which it looks like it could be, but you also understand there are other factors under the Sentencing Reform Act that I have to consider as well, right?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. And at this time do you understand that I don't know what your sentence is going to be?

THE DEFENDANT: I understand.

(Docket No. 49 at 18:13-19:15, 25:2-12, 35:20-36:5.)

A defendant's sworn representations made at a plea hearing "carry a strong presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." <u>Blackledge</u>, 431 U.S. at 74. Accordingly, "in the absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" <u>Lemaster</u>, 403 F.3d at 221 (citations omitted). From the colloquy cited above, the undersigned finds that Petitioner knew that the sentencing recommendations contained in the plea agreement were not binding on the Court, that he could not withdraw his guilty plea if his sentence was longer than he expected, and that at that time, Judge Keeley did not know what his sentence would be.

At sentencing, the Government moved for, and Judge Keeley granted, a three-level reduction for Petitioner's acceptance of responsibility. (Docket No. 50 at 6:16-7:1.) She subsequently determined that Petitioner's Guidelines range called for 70 to 87 months of incarceration. (<u>Id.</u> at 7:3-4.) As noted above, Petitioner's plea agreement did not contain a provision agreeing to a specific sentence or a specific Guidelines range pursuant to Fed. R. Crim. P. 11(c)(1)(C). Accordingly, Judge Keeley had discretion to impose a 78 month sentence on Petitioner. Any objection made by counsel to that sentence would have been overruled. Therefore, the undersigned finds that Petitioner has not demonstrated that he was prejudiced by counsel's failure to raise such an objection, as counsel's failure did not have any effect on Petitioner's judgment. <u>Strickland</u>, 466 U.S. at 691. Accordingly, the undersigned finds that Petitioner's first claim of ineffective assistance should be denied.

      **b.**      **Ground Four: Counsel Failed to Object to Enhancement of Base Offense Level**

As his last ground for relief, Petitioner argues that counsel was ineffective for failing to

"object to a conviction and sentence enhance [sic] under Federal advisory Guidelines that ex post facto utilize prior felony Judgments on their merits as applicable guideline crimes subject to recharacterization as recidivist guidelines crimes to enhance a base offense level beyond that averred in the indictment by the Grand Jury."  (Docket No. 37 at 10.)  In Section III.B.4, *supra*, the undersigned has already found that the Court did not err in its determination of Petitioner's base offense level as well as the four-level adjustment to that offense level.  Accordingly, Petitioner's ineffective assistance claim is without merit, as he has failed to show the requisite prejudice. See Strickland, 466 U.S. at 691.

## IV.   RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civil Action No. 1:13-cv-247, Docket No. 1; Criminal Action No. 1:12-cr-9, Docket No. 32) be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.  A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and

Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner John D. Washington.

DATED: August 19, 2014

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE